## PAUL EDWARD RICHARDSON *v.* STATE OF MARYLAND

[No. 73, September Term, 1978.]

*Decided May 31, 1979.*

262

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*John W. Sause, Jr., District Public Defender,* for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

We must decide under the circumstances of this case whether the prosecuting witness was justifiably held in contempt for refusing to testify after asserting his privilege against self incrimination.

On March 23, 1978, before the Circuit Court for Queen Anne's County, Paul Edward Richardson, appellant, was called as the prosecuting witness in the trial of James Copper, who was charged with assault with intent to murder the appellant. After taking the stand and being duly sworn, appellant gave his name, address, and age. He then acknowledged that he knew Copper, but when asked by the State's Attorney whether he had seen Copper on July 8, 1977, the day of the alleged crime, appellant responded by saying, "I wish to plead the Fifth Amendment." The State's Attorney then asked, "Were you at the Chickie Lounge on July 8th, 1977?" The appellant responded, "I don't want to testify." The trial judge excused the jury and held a bench conference at which the State's Attorney stated that he was unaware of anything that had occurred on July 8, 1977 that would justify appellant's claim to the protection of the fifth amendment and requested the trial judge to find appellant in direct contempt of court. Copper's attorney, however, asserted that, "[o]ur information is that [appellant] has every reason to invoke the Fifth Amendment for obvious reasons."

The trial judge proceeded to interrogate appellant and discovered that criminal charges arising out of an incident involving Copper and appellant that had occurred on December 24, 1977 [1] were pending against appellant and that Copper was to be the prosecuting witness. The court's inquiry further revealed that appellant had a lawyer representing him on the December 24th matter; that appellant had talked with his lawyer but it was appellant's decision to assert his fifth amendment privilege. While appellant indicated that because he and Copper were friends he did not want to testify concerning the July 8, 1977 incident, Copper's attorney suggested that the better reason was that:

> Mr. Richardson has accused Mr. Copper of stabbing him. If he testifies it is going to come out that he charged Mr. Copper [on July 8, 1977] with

---

1. Appellant was charged in the Circuit Court for Queen Anne's County in Criminal Information No. 2012 that he, Richardson, on 12/24/77 did assault with the intent to murder James Copper.

a knife himself and that he was the aggressor and that he is guilty of assault with intent to murder himself. If he testifies that is going to come out, that is why he is taking the Fifth Amendment. This will be the evidence in the case and I don't blame him for taking the Fifth.

The court responded:

Well, sir, if you were on the stand we would hold you in direct contempt of Court. We don't think that is the reason because somebody might say in a case that you were the aggressor and you would be charged. This judge doesn't think anybody has that right and that will be our ruling in this case.

After the bench conference the court asked the appellant the following question:

We ask you here and now, if we bring the jury in here, we direct you now before the jury comes in to answer that question, did you see him on the date or not? . . . Are you going to answer the question or not or do you still plead the Fifth Amendment?

The appellant responded:

I still plead the Fifth Amendment.

The jury was brought back into the courtroom and appellant was asked a series of questions by the prosecutor. Appellant answered some of these questions, but intermittently asserted his fifth amendment right. Because of his refusal to testify, appellant was confined (in lieu of bail) in the Queen Anne's County jail to await trial for direct contempt. He was subsequently convicted of direct criminal contempt, fined $1,000.00 and given a thirty day suspended sentence.[2] Appellant appealed to the Court of Special Appeals, and we issued a writ of certiorari prior to a decision by that court.

2. As to the procedure to be followed in a hearing involving direct criminal contempt see State v. Roll and Scholl, 267 Md. 714, 298 A. 2d 867 (1973).

Before us appellant contends that the evidence adduced before the trial court was more than sufficient to indicate that he had a reasonable apprehension of harmful disclosure and thus was entitled to invoke his fifth amendment privilege against self-incrimination, and that the circuit court erred in citing him for direct contempt. The State, however, argues that the contempt citation was proper because appellant's invocation of the privilege was without merit.

The protection of the Fifth Amendment to the United States Constitution which provides that, "No person . . . shall be compelled in a criminal case to be a witness against himself . . ." has been extended to the State through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U. S. 1, 3, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964). However, the privilege against compelled self-incrimination contained in Article 22 of the Maryland Declaration of Rights "[t]hat no man ought to be compelled to give evidence against himself in a criminal case" has long been recognized as being in pari materia with its federal counterpart.

Our predecessors clearly set forth in numerous cases the procedures to be followed in determining when a witness may refuse to testify on grounds that the evidence adduced may incriminate him. The witness should first be called to the stand and sworn. *Midgett v. State,* 223 Md. 282, 289, 164 A. 2d 526, 529 (1960), *cert. denied,* 365 U. S. 853, 81 S. Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to the point where he asserts his privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State,* 245 Md. 169, 173-74, 225 A. 2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to "determine whether the claim of privilege is in good faith or lacks any reasonable basis." *Midgett v. State, supra,* 223 Md. at 289. If further interrogation is pursued, then the witness should either answer the questions asked or assert his privilege, making this decision on a question by question basis. *Royal v. State,* 236 Md. 443, 447, 204 A. 2d 500, 502 (1964).

However, the standards for determining whether a witness' refusal to testify is justified on fifth amendment

grounds were set out in *Hoffman v. United States,* 341 U. S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). In *Hoffman,* the petitioner had been called to testify before a federal grand jury investigating racketeering. When asked questions concerning the whereabouts of a man who was a fugitive witness, Hoffman refused to respond on the ground that his answers might tend to incriminate him. This claim of privilege was challenged by the government, and a federal district court ordered Hoffman to return to the grand jury and answer the questions that had been asked of him. Hoffman was cited for contempt when he stated in open court that he would not obey the order. The Supreme Court held:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime. . . . But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. . . . The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, . . . and to require him to answer if "it clearly appears to the court that he is mistaken." . . . However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal

perception of the peculiarities of the case as by the facts actually in evidence." . . . [341 U. S. at 486-87 (citations omitted)].

The Court reviewed the circumstances surrounding Hoffman's appearance before the grand jury, and pointed out that the questions were designed to elicit information concerning his association with a fugitive witness, more particularly associations during the time that the witness was eluding the grand jury. Because their questions *might* have forced Hoffman to reveal that he had engaged in criminal activity by helping the witness to avoid an appearance before the grand jury, the court held that it was not " *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency' to incriminate." 341 U. S. at 488 [emphasis in original]. Hoffman's contempt conviction was reversed.

Although *Hoffman* was decided nearly three decades ago, its continued vitality has been recognized both by the Supreme Court of the United States, *e.g., Maness v. Meyers,* 419 U. S. 449, 461, 95 S. Ct. 584, 42 L.Ed.2d 574 (1975); *Kastigar v. United States,* 406 U. S. 441, 445, 92 S. Ct. 1653, 32 L.Ed.2d 212 (1972); *Malloy v. Hogan,* 378 U. S. 1, 11-12, 84 S. Ct. 1489, 12 L.Ed.2d 653 (1964), and the courts of this State. *See Smith v. State,* 283 Md. 187, 193, 388 A. 2d 539, 542 (1978); *Payne v. Payne,* 33 Md. App. 707, 714-15, 366 A. 2d 405, 410 (1976). Applying the Hoffman principles to the present case, it is apparent that appellant's claim of the fifth amendment privilege should have been upheld by the trial judge. Appellant was called to the stand and sworn. When asked if he had seen the defendant on the day of the alleged crime, he properly invoked his fifth amendment privilege by saying, "I wish to plead the Fifth Amendment." The jury was dismissed and the trial judge proceeded to question appellant about his reasons for refusing to testify on fifth amendment grounds. This was the proper procedure to follow.[3] *Shifflett*

---

3. Although the general rule is that a witness must decide whether to answer or invoke the privilege on a question by question basis, thereby allowing continued interrogation even after the claim of privilege has been

*v. State, supra,* 245 Md. at 173-74; *Midgett v. State, supra,* 223 Md. at 289. The question in this case, however, is whether the court was supplied with enough information to justify upholding appellant's claim of privilege. We hold that it was.

The court had ascertained from its own interrogation as well as that of the State's Attorney and Copper's attorney that while appellant knew Copper he did not wish to testify against him and had steadfastly refused to answer the questions as to whether appellant had seen Copper on July 8, 1977 or whether appellant had been at the Chickie Lounge on that night. The court knew also that Copper's defense was that appellant was the aggressor and was himself guilty of assault with intent to murder. Further the court knew that there were pending charges against appellant[4] for assault with intent to murder in which Copper was the prosecuting witness.

It is obvious to us that if appellant had in fact been the aggressor, then answers to questions as to whether appellant had seen Copper at the Chickie Lounge on the night of the alleged crime would have placed appellant at the scene of the crime and therefore would have provided "a link in the chain of evidence" needed to convict him in a subsequent prosecution. *Hoffman v. United States, supra,* 341 U. S. at 486. Responsive answers to these questions would be admissible against appellant at a later trial, *Smith v. State, supra,* 283 Md. at 193, and it was not, therefore, *perfectly clear* that appellant's answers could not *possibly* have a tendency to incriminate him.

---

upheld with regard to previous questions, the trial court should be conscious of the potential hazards of continued questioning. An uncounseled witness, such as appellant, may be called upon to make repeated and sometimes highly technical decisions as to whether an answer to a certain question might incriminate him. An answer to a seemingly innocent question might be incriminating, and there is a risk that by answering too many questions the witness will be held to have waived his privilege. *See* Rogers v. United States, 340 U. S. 367, 372-74, 71 S. Ct. 438, 95 L. Ed. 344 (1951); United States v. Yurasovich, 580 F. 2d 1212, 1221 (3rd Cir. 1978).

4. The record makes clear that appellant was represented by counsel in the case pending against him and his counsel was well known to the court. Under these circumstances, the better course of action by the court would have been to call in appellant's counsel in order to clarify any confusion surrounding appellant's claim of privilege.

It should have been equally apparent to the trial judge that the appellant's testimony as to the reasons for and circumstances of the altercation between appellant and Copper could impact upon appellant's motives in the December 24th altercation where Copper charged appellant with assault with intent to murder.

Although in some cases it may be necessary for the witness himself to justify his claim of privilege, it was not necessary in the instant case. The facts adduced before the trial court were more than sufficient to justify appellant's claim of protection under the Fifth Amendment. It was error for the trial judge to deny appellant that protection and appellant's conviction for direct contempt cannot stand.

> *Judgment of the Circuit Court for Queen Anne's County reversed; costs to be paid by Queen Anne's County.*