467 A.2d 517

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**UNNAMED ATTORNEY.**

**No. 51, Sept. Term, 1983.**

Court of Appeals of Maryland.

Nov. 7, 1983.

Opinion Dec. 1, 1983.

38

Melvin Hirshman, Bar Counsel, Annapolis (Kendall R. Calhoun and Glenn M. Grossman, Asst. Bar Counsels, Annapolis, on the brief), for appellant.

Sheldon H. Braiterman and Andre R. Weitzman, Baltimore (Mary Morton Kramer, Baltimore, on the brief), for appellee.

## ORDER

PER CURIAM.

It is this 7th day of November, 1983

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that for reasons to be set forth in an opinion later to be filed, the decree of the Circuit Court for Baltimore City dated April 5, 1983, enjoining the Attorney Grievance Commission from proceeding with attorney disciplinary actions against the respondent unnamed attorney until final termination of a pending criminal appeal filed by respondent be, and it is hereby, vacated.

Costs to be paid by the respondent unnamed attorney. Mandate to issue forthwith.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

The primary issue before us is whether, in the circumstances of this case, § 5–301(g) of Title 5 of the Administrative and Procedural Guidelines of the Attorney Grievance Commission of Maryland, promulgated pursuant to Maryland Rule BV3 b(i), violates the appellee unnamed attorney's constitutional right against compelled self-incrimination. The challenged rule governs attorney disciplinary proceedings before Inquiry Panels empowered by Maryland Rule BV6 to conduct hearings respecting claimed violations of the Code of Professional Responsibility, Maryland Code (1977 Repl.Vol.), Vol. 9C, Appendix F. In pertinent part, the Commission's guideline requires the Inquiry Panel chairman, at the outset of the hearing, to

"(g) Inform the Respondent of his privilege against incriminating himself of a crime by stating that (i) he has a right to remain silent by asserting that his testimony

may tend to incriminate him of a crime; (ii) anything Respondent does say may be used against him in a subsequent criminal proceeding; and (iii) other evidence may be admitted in the Proceedings tending to prove the allegations of the Complaint, and such evidence may be accepted as true in the absence of Respondent's testimony or other evidence controverting such evidence."

I

The attorney in this case was charged by information in the United States District Court for the District of Maryland with filing a false federal income tax return for the year 1975 in violation of 26 U.S.C. § 7206(1). On February 25, 1980, he entered into a "Stipulation" with the United States Attorney by which he agreed to the entry of a judgment of conviction if the federal district court found that a challenged search and seizure of evidence from his law offices, conducted by the government during the investigation, was lawful. The district court later ruled that the search and seizure was conducted pursuant to an invalid general warrant and was therefore unlawful. The United States Court of Appeals for the Fourth Circuit reversed the district court and remanded for further proceedings. Subsequently, on January 27, 1982, the district court entered a judgment of conviction against the attorney pursuant to the stipulation. The attorney appealed to the Fourth Circuit.

On March 10, 1982, the Attorney Grievance Commission, pursuant to Maryland Rule BV16, filed a petition with us to suspend the attorney from practicing law in this State. We denied the petition in an order dated May 13, 1982. Subsequently, the Commission informed the attorney that his misconduct, as evidenced by his conviction, had been referred to an Inquiry Panel for disciplinary proceedings under Rule BV6. On November 5, 1982, the attorney requested the Commission to continue the disciplinary proceedings until appellate review of his criminal conviction was completed. The request was denied on November 19, 1982.

On November 26, 1982, the attorney filed a petition in the Circuit Court of Baltimore City to enjoin all disciplinary proceedings against him pending completion of appellate review of his conviction in the federal courts. He contended that § 5–301(g) violated his constitutional right not to be compelled to be a witness against himself. He asserted that § 5–301(g) exacted a penalty for invoking his privilege against self-incrimination in that, unless the Inquiry Panel proceedings were enjoined, he would "suffer irreparable harm . . . [by being] forced to choose between a real and substantial danger of self-incrimination or having the allegations in the stipulation deemed to be true without an opportunity to testify on his own behalf." In other words, the attorney maintained that if compelled to appear before an Inquiry Panel while his appeal was pending, his testimony might be used against him in the event his conviction was reversed and a new trial ordered. On the other hand, the attorney claimed that if he refused to testify, the allegations against him could be accepted as true under the explicit provisions of § 5–301(g).

The Commission moved to dismiss the petition on the ground that the circuit court lacked subject matter jurisdiction; it contended that original and exclusive jurisdiction in attorney disciplinary proceedings is vested in the Court of Appeals of Maryland. On February 8, 1983, the court (Levin, J.) denied the Commission's jurisdictional motion and enjoined further disciplinary proceedings against the attorney "until final termination of the criminal case." After finding that the Inquiry Panel proceedings concerned the same subject matter as the conduct which resulted in the attorney's criminal conviction, the court said:

> "The Court finds that if the Inquiry Panel proceedings are held, Petitioner will be expected to testify, he having been summoned to that proceeding. The Administrative and Procedural Guidelines for Inquiry Panel proceedings provide that in the absence of testimony from the Petitioner, evidence presented against him may be accepted as true, putting Petitioner in a dilemma concerning his testimony

necessary to defend himself and the possibility that if he testifies before the Inquiry Panel, and his appeal to the Fourth Circuit is successful, that testimony can be used against him in the federal proceedings.

"The Court finds that because Respondent intends to proceed with disciplinary proceedings, regardless of the outcome of the appeal, the public interest is satisfied. However, the interests of Petitioner in protecting his rights are more significant.

"The Court finds that there will be irreparable injury to the Petitioner if this injunction is denied. The public interest will only be delayed.

"The Court finds that the balance of convenience is weighed in favor of the Petitioner in that the possible harm to him is greater than any inconvenience of. the Respondent.

. . . .

"The Court therefore concludes as a matter of law that the Petitioner is entitled to an injunction. The Court further notes that the Court of Appeals denied a temporary suspension of Petitioner previously, which indicates Petitioner is not such an immediate danger to the public as to require such a drastic action. The Court also notes the American Bar Association's policy to delay grievance procedures pending a criminal case, which represents a consensus of legal thinking, but does not have the force of precedent."

The Commission appealed and we granted certiorari prior to decision by the Court of Special Appeals. By order dated November 7, 1983, we vacated Judge Levin's decree granting the injunction for reasons to be set forth in an opinion later to be filed. We now give our reasons for so acting.

## II

The Commission argues, as it did below, that (1) the lower court was without jurisdiction to issue the injunction, and (2) that because the challenged provisions of § 5–301(g) are not

violative of the attorney's constitutional right against self-incrimination, the injunction was improperly issued. While we entertain some doubt that the lower court had jurisdiction to grant the injunction, we need not here consider that issue, for assuming *arguendo* that it did, the injunction should not have been granted in the circumstances of this case.

The Fifth Amendment to the federal constitution provides in pertinent part:

"No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

The constitutional provision is applied to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Article 22 of the Maryland Declaration of Rights also protects individuals from compelled self-incrimination.[1]

■■■ It is settled law that a state may not impose a substantial penalty on an individual who elects to exercise his constitutional right against compelled self-incrimination. Testimony given under the threat of a severe sanction is thus compelled testimony obtained in violation of the constitutional guarantee. *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). Therefore, the prosecution in a criminal case is not permitted to comment on the fact that the accused did not testify. *Griffin v. California,* 380 U.S. 609, 614–15, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965). Penalties which amount to compulsion within the contemplation of the constitutional prohibition are not limited to fines or jail sentences. *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). Automatic deprivation of a significant economic benefit upon assertion of the privilege is also prohibited; consequently, an attorney may not be automatically disbarred because he asserts his self-incrimination privilege and refuses to testify before a

---

1. Article 22 is in *pari materia* with the Fifth Amendment. *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979).

judicial inquiry into his alleged misconduct. *Spevack, supra.* Nor may government employees be discharged automatically for refusing to waive their Fifth Amendment privilege. *Sanitation Men v. Sanitation Comm'r,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Similarly, officers of political parties may not be removed from office solely for asserting the privilege. *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). And contractors may not be made ineligible to contract with the government on the ground that they refused to waive their privilege against self-incrimination. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

◼ Not every adverse consequence of invoking the self-incrimination privilege constitutes compulsion, however. Unlike the laws struck down in the cited Supreme Court cases, § 5–301(g) does not impose a sanction upon the assertion of the constitutional protection against self-incrimination. As earlier observed, § 5–301 prescribes the procedure to be followed by the Inquiry Panel chairman at the commencement of each hearing. He is required to advise the attorney of the governing procedural rules so as to ensure fairness by informing the attorney of his rights. Subsection (g) requires the chairman to advise the attorney of his right to invoke the privilege against self-incrimination. Subsection (g)(i) requires that the attorney be told that he has the right to remain silent. Subsection (g)(ii) warns him of the consequences of his decision to testify. He is told that anything he says may tend to incriminate him and may be used against him in a subsequent criminal proceeding. Subsection (g)(iii) informs the attorney of the potential consequences of his silence. It states that if evidence against the attorney is presented, and the attorney puts on no evidence in his own defense, the Inquiry Panel may accept the evidence against the attorney as true. Simply put, it warns the attorney that the Inquiry Panel may believe evidence which the attorney does not contest. As such, the provision is

merely a description of how proof may be viewed by the finder of fact in the absence of evidence to the contrary. No adverse inference may be drawn from the attorney's refusal to testify in a disciplinary proceeding against him. Nor does § 5–301(g) impose any sanction upon the attorney's invocation of the constitutional protection. Unlike the attorney in *Spevack, supra,* the appellee will not be disbarred for refusing to testify before the Inquiry Panel. Rule BV10 d requires that "clear and convincing" evidence of punishable misconduct be shown before any disciplinary sanction is imposed. The unnamed attorney in this case may not be disciplined on the basis of his silence. It is therefore plain that § 5–301(g) does not violate the appellee attorney's constitutional right against compelled self-incrimination.

Our conclusion is consistent with state and federal cases. For example, in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), a prisoner was charged with a violation of prison disciplinary rules. At the hearing before the Disciplinary Board, he was informed that he might be prosecuted criminally for the activities giving rise to the alleged disciplinary infraction and was advised to retain an attorney. He was also told of his right to remain silent and warned that his silence could be held against him. The prisoner thereafter filed an action under 42 U.S.C. § 1983 for damages and injunctive relief, claiming a violation of his constitutional rights. In rejecting his argument, the Supreme Court ruled that holding the inmate's silence against him in a prison disciplinary proceeding did not constitute a penalty imposed on the exercise of the Fifth Amendment privilege against self-incrimination. The Court noted that the prisoner's silence by itself was insufficient to support imposition of a sanction by the Disciplinary Board. While the regulation in the instant case does not sanction the use of silence against an attorney, nevertheless what the Court said in *Baxter* in explaining differences between that case and its *Garrity* and *Lefkowitz* line of decisions is pertinent here (425 U.S. at 318, 96 S.Ct. at 1558):

"There, failure to respond to interrogation was treated as a final admission of guilt. Here, [the prisoner] remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege. *The advice given inmates by the decision-makers is merely a realistic reflection of the evidentiary significance of the choice to remain silent.*" (Emphasis added.)

■ Appellee attorney in the present case, in support of the lower court's issuance of the injunction, asserts that to be forced to choose between remaining silent and testifying before the Inquiry Panel violated his constitutional rights against self-incrimination. But, as the Supreme Court said in *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971):

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. [citation omitted] Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."

Manifestly, difficult choices confront an individual who is the subject of simultaneous criminal and civil or administrative proceedings. It is well accepted that such an individual has no constitutional right to be relieved of the choice whether or not to testify, and civil proceedings will not be enjoined pending the disposition of the criminal charges. *See Hoover v. Knight,* 678 F.2d 578 (5th Cir.1982); *Arthurs v. Stern,* 560 F.2d 477 (1st Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *De Vita v. Sills,* 422 F.2d 1172 (3d Cir.1970); *Sternberg v. State Bar of Michigan,* 384 Mich. 588, 185 N.W.2d 395 (1971). *De Vita* is virtually identical to the case at bar. There, a judge,

accused of accepting bribes, was suspended from office. He sought an injunction to stay state disciplinary proceedings pending the conclusion of his criminal trial. The Third Circuit rejected the claim that the disciplinary proceedings violated the judge's Fifth Amendment privilege; it held that he had no constitutional right to be relieved of the burden of choosing whether to exercise his right to remain silent. The analysis set forth in *De Vita* has been applied to attorneys in the conduct of disciplinary proceedings. *Sternberg, supra.* In that case, the Michigan Supreme Court vacated an injunction staying disciplinary proceedings against an attorney pending the outcome of his trial on criminal charges related to the allegations of professional misconduct.

Section 5–301(g) not being violative of the attorney's constitutional right against self-incrimination, there was no basis in this case for the lower court to enjoin the Inquiry Panel proceedings until completion of the process of appellate review of the attorney's criminal conviction.[2]

---

**2.** The Fourth Circuit affirmed the unnamed attorney's conviction in an unreported per curiam decision filed on September 30, 1983. A petition for certiorari is now pending in the Supreme Court.