557 A.2d 203

**David Cleveland ADKINS**

v.

**STATE of Maryland.**

**No. 158, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 4, 1989.

Laurie I. Mikva, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, and BLACKWELL, JJ.

BLACKWELL, Judge.

Our primary concern in this homicide case involves the propriety of calling an accomplice as a state's witness in the jury's presence when it is known by the court and counsel that the witness will invoke the privilege against compelled self-incrimination.

The Petition for Writ of Certiorari presented the following additional issues: (1) whether a recorded conversation between the defendant's nontestifying accomplice and an

undercover informant is admissible as a declaration against penal interest; (2) does the admission of a recorded conversation between the nontestifying accomplice and the informant violate the defendant's right to confrontation under the Federal and Maryland Constitutions; and (3) whether the informant's written memorandum concerning a conversation with the defendant, discussing the alibi of the defendant, is inadmissible hearsay.

Because we shall conclude the duplicating of Fifth Amendment procedures before the jury constitutes prejudicial error, we reverse the judgment of the Court of Special Appeals. Due to our disposition of this case based on the erroneous invocation of the Fifth Amendment before the jury, we further find it unnecessary to discuss the merits of the remaining evidentiary questions.

A jury in the Circuit Court for Washington County convicted Petitioner, David Cleveland Adkins (Adkins), of felony murder and robbery. The Court of Special Appeals affirmed Adkins' conviction for felony murder but vacated the robbery conviction, agreeing with petitioner that it merged with the murder conviction, *Adkins v. State*, 72 Md.App. 493, 531 A.2d 699 (1987). Pursuant to former Maryland Rule 828(g), (now 8–501(g)), the parties have submitted an Agreed Statement of Facts.

According to this Statement, the victim, Joseph Michael Teal (Teal), was last seen alive in a Hagerstown tavern in the company of Adkins and Darryl Troxell (Troxell). Teal bought the rounds and the three men drank together for approximately two hours. Teal's body was found the next day floating face down in a creek outside of town. His wallet and watch were never recovered. The initial autopsy report listed the cause of death as coronary insufficiency. Dr. Kaufman testified as an expert witness in forensic pathology. Based on a hypothetical containing much of the evidence introduced at trial, Kaufman opined that Teal's death resulted from a heart attack caused by an attempted strangulation.

Lester Beach (Beach), a brother-in-law of Adkins and also related to Troxell, was in custody in Pennsylvania at the time of the ongoing investigation concerning Teal's death. Pennsylvania authorities agreed to drop pending charges against Beach in return for Beach's cooperation in the homicide investigation.[1] As part of the agreement, Beach visited Troxell in the Washington County Detention Center where Troxell was detained on other charges. Beach donned a body wire, allowing Corporal Mullendore to monitor and record the conversation. By the time of Adkins' trial, Troxell had been convicted and sentenced for the murder of Teal. Troxell was in the process of appealing his conviction to the Court of Special Appeals.

During the trial, an evidentiary hearing was held on Adkins' Motion in Limine to bar introduction of the recorded Beach–Troxell conversation.[2] At the hearing, held out of the jury's presence, Troxell invoked his Fifth Amendment privilege against self-incrimination after conferring with his lawyer. The trial judge admonished Troxell stating "the Fifth Amendment is not available to you and I would instruct you to answer the questions." In finding Troxell to be a compellable witness despite his pending appeal, the court apparently relied on the Court of Special Appeals' decision in *Ellison v. State*, 65 Md.App. 321, 500 A.2d 650 (1985), which held "that the risk of incrimination terminates at the moment the sentence is pronounced and the judgment thereby becomes final." *Id.* at 338, 500 A.2d at 658. We

---

1. In Pennsylvania, Beach was charged with receiving stolen property and being a fugitive. He agreed to cooperate with Corporal Douglas Mullendore of the Washington County Sheriff's Department on the Teal case, and was released from prison.

2. On July 22, 1986, defense counsel filed a Motion In Limine, with written memorandum, raising several objections concerning the State's calling of Troxell as a witness. The State filed an Answer to Motion in Limine and accompanying memorandum on July 28, 1986, in which it was noted that "the State fully intends to request an evidentiary hearing on the record *out of the presence of the jury* before calling Troxell and before attempting to introduce his statements." (Emphasis added).

subsequently overruled this holding in *Ellison v. State*, 310 Md. 244, 258–59, 528 A.2d 1271, 1278 (1987).[3] Nonetheless, Troxell refused to respond to the prosecutor's interrogation. The court found Troxell in contempt and sentenced him to six months incarceration consecutive to his other sentences. Troxell indicated that he would also assert his privilege if recalled at trial.

The following morning, the court ruled that portions of the recorded Beach–Troxell conversation were admissible as declarations against Troxell's penal interest. The parties debated whether Troxell's invocation of the Fifth Amendment out of the jury's presence was sufficient to establish his unavailability. The court then permitted the State to call Troxell in the presence of the jury over the objection of the defendant. Troxell asserted he was afraid anything he said might jeopardize his pending appeal. Still in the jury's presence, the trial judge instructed Troxell that he had no right to refuse to testify and pronounced Troxell in contempt of court for the second time.

On appeal, the Court of Special Appeals affirmed Adkins' conviction. Central to the intermediate appellate court's findings were: (1) the calling of Troxell in the jury's presence was not reversible error; and (2) Troxell's statements qualified as declarations against penal interest and their admission did not violate appellant's rights under the Confrontation Clause.[4]

The Supreme Court has identified two principal theories in analyzing prejudicial error where it is known that a

---

3. The Court of Appeals' decision in *Ellison* was pending on certiorari at the time the trial judge made his ruling. In *Ellison v. State*, 310 Md. 244, 528 A.2d 1271 (1987), we overruled the Court of Special Appeals, as further explained *infra*, at 9, because the privilege against compelled self-incrimination applies through the direct appellate process. Here, Troxell's conviction, arising out of the same circumstances underlying the charges against Adkins, was pending on appeal in the Court of Special Appeals at the time the trial judge ruled on the Motion in Limine.

4. *Adkins v. State*, 72 Md.App. 493, 498–506, 531 A.2d 699, 700–706 (1987).

witness will refuse to testify based on the privilege against self-incrimination. First, "error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." *Namet v. United States*, 373 U.S. 179, 186, 83 S.Ct. 1151, 1154–55, 10 L.Ed.2d 278 (1963). Second, it may be appropriate to consider whether "inferences from a witness' refusal to answer added critical weight to the prosecution's case...." *Id.* at 187, 83 S.Ct. at 1155. Under this theory the Supreme Court noted the danger of allowing the jury to consider inferences in a form not subject to cross-examination.

Adkins maintains that his defense was prejudiced by the calling of Troxell in the presence of the jury when it was known that he would invoke the privilege against self-incrimination. The State contends that there was no actual prejudice to the defense as a result of the calling of Troxell, and that the procedure was based on a legitimate need to establish the unavailability requirement under the declaration against penal interest exception to the hearsay rule. Based on the standards set forth in *Vandegrift v. State*, 237 Md. 305, 206 A.2d 250 (1965), we agree with petitioner's position and shall reverse.

■ The privilege against compelled self-incrimination is guaranteed under both the Fifth Amendment of the United States Constitution and Art. 22 of the Maryland Declaration of Rights. The Maryland Constitution provides "that no man ought to be compelled to give evidence against himself in a criminal case."[5] Md. Const., Decl. of Rts., Art. 22. Upon assertion of the privilege by a witness, the court must

---

5. *See also* U.S. Const. amend. V, which states: "nor shall [any person] be compelled in any criminal case to be a witness against himself,...." The privilege contained in Art. 22 is generally *"in pari materia* with its federal counterpart." *In re Maurice M.*, 314 Md. 391, 393 n. 1, 550 A.2d 1135, 1136 n. 1 (1988), *cert. granted in part, Baltimore City Dept. of Social Serv. v. Bouknight*, 490 U.S. ——, 109 S.Ct. 1636, 104 L.Ed.2d 152 (1989); *Ellison v. State*, 310 Md. 244, 259 n. 4, 528 A.2d 1271, 1278–79 n. 4 (1987); *Richardson v. State*, 285 Md.

determine whether there is a reasonable basis for the invocation of the privilege and whether the privilege is invoked in good faith. McLain, *Maryland Evidence* § 514.1, at 605 (1987); *McCormick on Evidence* § 139, at 341 (E. Cleary 3d ed. 1984); *see also Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1024 (1979); *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *United States v. Klauber,* 611 F.2d 512, 514 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980). "Ordinarily, the court will make the necessary determination in open court *but outside the presence or hearing of the jury.*" McClain, *Maryland Evidence* § 514.1, at 606 (1987) (footnotes omitted and emphasis added).[6]

---

261, 265, 401 A.2d 1021, 1024 (1979). *Brown v. State,* 233 Md. 288, 296, 196 A.2d 614, 617–18 (1964). The federal privilege is applied to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); *see also McCormick on Evidence* § 117, at 284–85 (E. Cleary 3d ed. 1984).

6. *Cf.* Federal Rule of Evidence 804(a)(1) defines "unavailability" as including situations in which the declarant—
   (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
   (2) persists in refusing to testify concerning the subject matter of the declarant's statement;
We note that the Fourth Circuit has declined to require the defense to actually produce the witness before the jury prior to a finding of unavailability. *See United States v. Brainard,* 690 F.2d 1117, 1123 (4th Cir.1982), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985), citing *United States v. Thomas,* 571 F.2d 285, 288 (5th Cir.1978) (where attorney expressly indicated that client would assert privilege under the Fifth Amendment); *but see United States v. MacCloskey,* 682 F.2d 468, 477–8 (4th Cir.1982) ("The rule requires, however, that the court first rule the declarant exempt from testifying on the ground of privilege."); *see also Roberts v. United States,* 445 U.S. 552, 560 n. 7, 100 S.Ct. 1358, 1364 n. 7, 63 L.Ed.2d 622 (1980) ("It is the duty of a court to determine the legitimacy of a witness' reliance upon the Fifth Amendment."); *McCormick on Evidence* § 139, at 341 (E. Cleary 3d ed. 1984) ("Rather, the court itself has the obligation to determine whether the refusal to answer is in fact justifiable under the privilege."). We find no authority for the proposition that the unavailability inquiry by the trial judge must be conducted in the jury's presence.

■ In *Richardson v. State, supra,* we outlined the proper procedure to be followed in determining when a witness may refuse to testify on grounds that the evidence adduced may incriminate him.[7] The Court noted the standard for a trial judge in assessing the privilege as set forth in *Hoffman v. United States, supra:*

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'

*Id.* at 266–67, 401 A.2d at 1024; 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege must be accorded a liberal construction in favor of the right that it was intended to secure. *Id.* at 486, 71 S.Ct. at 818; *see also In re Maurice M.,* 314 Md. 391, 397, 550 A.2d 1135, 1138

---

7. Where it is unknown that a witness intends to invoke the privilege, Judge Cole, writing for the Court stated:
   The witness should first be called to the stand and sworn. *Midgett v. State,* 223 Md. 282, 289, 164 A.2d 526, 529 (1960), *cert. denied,* 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to a point where he asserts his privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State,* 245 Md. 169, 173–74, 225 A.2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to 'determine whether the claim of privilege is in good faith or lacks any reasonable basis.' *Midgett v. State,* 223 Md. at 289 [164 A.2d 526]. If further interrogation is pursued, then the witness should either answer the questions asked or assert his privilege, making this decision on a question by question basis. *Royal v. State,* 236 Md. 443, 447, 204 A.2d 500, 502 (1964).
   *Id.* at 265, 401 A.2d at 1024. The procedure outlined above is a reasonable method of protecting a defendant's privilege against compelled self-incrimination and at the same time ensuring that the jury shall not be exposed to the trial judge's inquiry. We conclude *Richardson* does not apply when as here there is clear indication on the record that the witness will invoke the privilege against compelled self-incrimination. The mechanical procedure of first calling the witness before the jury is not relevant in the present case.

(1988), *cert. granted in part, Baltimore City Dept. of Social Serv. v. Bouknight,* 490 U.S. ——, 109 S.Ct. 1636, 104 L.Ed.2d 152 (1989).

■ The availability of the privilege generally depends upon the status of the witness. In Maryland, we have recently firmly adopted the majority rule "that a witness who has been found guilty and sentenced on criminal charges is entitled to claim the privilege against self-incrimination with regard to matters underlying those charges while the time for appeal or sentence review is running, or while a direct appeal or sentence review is pending." *Ellison v. State,* 310 Md. 244, 253–54, 528 A.2d 1271, 1275–76 (1987) (other citations omitted). *Ellison* held an accomplice who had previously been convicted may invoke the privilege as a witness at defendant's subsequent trial as long as the appeal period or sentence review period had not expired. *Id.* at 258–59, 528 A.2d at 1278; *see generally Smith v. State,* 283 Md. 187, 388 A.2d 539 (1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979); *McClain v. State,* 10 Md.App. 106, 268 A.2d 572 (1970), *cert. denied,* 259 Md. 733 (1970). The possibility of incrimination relates to the verdict as well as the sentence imposed. In *Ellison, supra,* Judge Eldridge writing for the Court commented: "While a majority of appeals by defendants in criminal cases may not result in reversals and further proceedings, a criminal defendant's chance of overturning a verdict or sentence on appeal certainly does not fall into the category of a mere remote possibility." 310 Md. at 257, 528 A.2d at 1277. There is sufficient possibility of a new trial as a result of a pending appeal. When an appeal or application for leave to appeal is filed, the right to claim the privilege continues during the pendency of the appellate process.

In *Taylor v. Best,* 746 F.2d 220, 222 (4th Cir.1984), *cert. denied,* 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985), the United States Court of Appeals for the Fourth Circuit recognized that "it is possible that post-conviction incriminating evidence could be used against an inmate who had been convicted and sentenced but whose conviction was being

appealed." Rather than determining the availability of the privilege on the type of proceeding involved, "we must base it on the nature of the statement or admission *and the exposure which it invites*," 746 F.2d at 223, quoting *In re Gault*, 387 U.S. 1, 9, 87 S.Ct. 1428, 1434, 18 L.Ed.2d 527 (1967) (emphasis in original). The Fourth Circuit has also applied this principle where the witness is an alleged accomplice of the defendant. In *Mills v. United States*, 281 F.2d 736, 741 (4th Cir.1960), the court held that where a witness had pled guilty to robbery but had not yet been sentenced, nor had her appeal time run, the witness could not be compelled to testify against her accomplice. The court reasoned that statements made by the witness, if she were required to testify, could impact upon the disposition of her appeal or the fixing of sentence. *See also Ottomano v. United States*, 468 F.2d 269 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973). Consistent with our reasoning in *Ellison, supra*, and with the federal authorities cited above, Troxell had the right to invoke the privilege against self-incrimination as his appeal was pending before the Court of Special Appeals.

Troxell's intention to assert the privilege was originally manifested after a hearing was held on Adkins' Motion in Limine to bar the introduction of the recorded Beach–Troxell conversation. Troxell invoked the privilege at the evidentiary hearing and refused to testify concerning events related to his pending appeal. The court found him in contempt and sentenced him to six months' imprisonment, consecutive to his current sentence. Troxell expressly indicated that he would refuse to testify if subsequently called, notwithstanding the finding of contempt, and the possibility of an additional sentence being imposed upon a second contempt order. At the conclusion of the hearing, the prosecutor stated, "I think still to satisfy the unavailability issue, I will have to call Mr. Troxell to the witness stand before the jury to get his refusal to testify." Defense counsel immediately objected to the prosecutor's suggestion.

The following morning, the trial judge allowed the State to recall Troxell in the presence of the jury, requiring the Fifth Amendment to be invoked on a question by question basis. Upon direct examination, he clearly revealed his intent to invoke the privilege and an unwillingness to testify.[8] Despite Troxell's insistence on refusing to testify, the trial judge ordered him to answer the prosecutor's questions before the jury. The following inquiry was conducted before the jury:

> THE COURT: The Court has considered that at an evidentiary hearing, and I have reviewed the case of *Ellison v. State* [65 Md.App. 321, 500 A.2d 650] and am satisfied, under *Ellison v. State [Id.]* that the state of the law is that your case which is on appeal could not be jeopardized by your testifying in this trial, and I therefore would instruct you to answer the question.
>
> WITNESS [TROXELL]: I'm sorry, your honor, I guess I will have to take a contempt of court.
>
> THE COURT: Alright. You are in direct contempt of court by reason of refusing to answer the question that was put to you. What's your next question?
>
> Q: [MR. NORMAN, STATE'S ATTORNEY]: Mr. Troxell, are you going to answer any further questions that I have about the activities of you and the defendant, David Adkins, on the nights of June 26th and June 27th, 1985?
>
> A: No, Sir, I will not.
>
> THE COURT: Mr. Troxell, the Court will direct you, instruct you that under law you are required to answer these questions and that if you refuse [to answer] these questions, you will be in contempt of court. Now I direct you to answer the question. What is your question, Mr. Norman?

---

8. After stating his full name before the jury, Troxell responded: Your honor, I have a case pending in the Special Court of Appeals right now, and I feel that if I say anything here today that it would jeopardize my case that is on appeal.

Q: Mr. Troxell, where were you on the nights of June 26th and June 27th, 1985, after 10 P.M.?

(No Response).

MR. NORMAN: Your Honor, I request that the Court direct the witness to answer the question.

THE COURT: Mr. Troxell, the Court does direct you to answer the question.

(No Response).

MR. NORMAN: Are you going to answer the question, Mr. Troxell?

A: No, Sir.

THE COURT: Alright, Mr. Troxell, are you going to refuse to answer any questions that are put to you about this?

A: Yes, Sir, I am.

THE COURT: The Court finds you in contempt of court and sentences you to six months in the Department of Correction, the sentence to be consecutive to any sentence that you are presently serving. You are excused from the courtroom.

Adkins' counsel immediately moved for a mistrial, objecting that the above colloquy should not have been conducted before the jury. Counsel additionally argued that revealing to the jury the fact of Troxell's conviction was prejudicial. That motion was denied.

■ In *Vandegrift v. State*, 237 Md. 305, 206 A.2d 250 (1965), we set forth five factors to be considered in determining whether the calling before the jury of a state's witness who invokes the privilege constitutes reversible error:

1. That the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness'

complicity, which will, in turn, prejudice the defendant in the eyes of the jury;

2. That the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and therefore, called him in bad faith and for an improper purpose;

3. That the witness had a right to invoke his privilege;

4. That defense counsel made timely objection and took exception to the prosecutor's misconduct; and

5. That the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury.

*Id.* at 309, 206 A.2d at 252. Although some commentators have articulated these standards in a different fashion, we continue to adhere to *Vandegrift.* *See* Annotation, *Propriety and Prejudicial Effect of Prosecution's Calling as Witness, to Extract Claim of Self-Incrimination Privilege, One Involved in Offense Charged Against Accused,* 19 A.L.R. 4th 368 (1983, 1988 Supp.). It is important to note that we do not require the satisfaction of all five factors in order to support a reversal of a defendant's conviction. *See Vandegrift,* 237 Md. at 309, 206 A.2d at 253 (where the Court found four out of five factors to be sufficient to warrant a finding of reversible error). The *Vandegrift* factors serve as guidelines to assess the overall circumstances of the invocation of the privilege.

In applying the *Vandegrift* test to the present case, it is evident that Troxell was "closely implicated in the defendant's alleged criminal activities" such that the first factor is unquestionably satisfied. Troxell was earlier convicted of felony murder for his role in the Teal murder. Troxell's conviction, pending on appeal, arose out of the same facts and events underlying the charges against Adkins. As to the third factor, our prior discussion as to the availability of the privilege supports the conclusion that Troxell had a right to invoke the privilege. *See Ellison, supra,* 310 Md.

at 258–59, 528 A.2d at 1277–78. Defense counsel made a timely objection to the questioning of the prosecutor and to the inquiry conducted by the trial judge, and sought a mistrial.[9] With respect to the fifth factor, the court did not instruct or admonish the jury regarding the inferences to be drawn from Troxell's claim of privilege. Furthermore, the trial judge compounded the situation by holding Troxell in contempt of court in the presence of the jury.[10] As to the second factor, although it was clear that the prosecutor knew Troxell would assert the privilege, we agree with the Court of Special Appeals that there was no evidence of bad faith or misconduct on the part of the prosecutor. The question of recalling Troxell in the jury's presence arose simply because the prosecutor argued that he had to create a record as to whether the witness was unavailable for purposes of introducing hearsay testimony. The prosecutor sought an express finding of "unavailability" by the court before he would proceed. Nonetheless, four of the five *Vandegrift* factors are satisfied.

In viewing all of the circumstances of the invocation of the privilege by Troxell, we hold that it was prejudicial error for the trial judge to conduct the second inquiry as to unavailability in the presence of the jury.[11] Here, both the

---

9. Defense counsel initially alerted the court in its Motion in Limine: [T]o call Mr. Troxell and have him invoke the Fifth Amendment in front of the jury would be prejudicial to the defendant. If he intends to invoke his Fifth Amendment right, he should do it out of the presence of the jury so that the jury is not informed either way and the defendant is not prejudiced.

10. *See generally United States v. MacCloskey, supra,* 682 F.2d at 478 n. 19 ("We think that the best procedure to follow after a witness has improperly invoked the Fifth Amendment or any privilege in such a situation, is to issue an order, *outside of the jury's presence,* directing him to testify and admonishing him that his continued refusal to testify would be punishable by contempt" (emphasis added)).

11. *Cf. Christensen v. State,* 274 Md. 133, 140, 333 A.2d 45, 49 (1975) (a defendant may be prejudiced by an accomplice or codefendant being called to the stand, and then not testifying by claiming the privilege against self-incrimination).

court and counsel were aware that the accomplice intended to invoke the privilege against self-incrimination as a result of the prior Motion in Limine testimony of Troxell. He clearly indicated that he would continue to refuse to testify if recalled before the jury, notwithstanding the earlier finding of contempt. Under these facts, the court should not have allowed the accomplice to be recalled before the jury for the purpose of direct examination. The trial judge should have ruled on Troxell's availability during the Motion in Limine procedure, making a factual finding on the record, out of the presence of the jury.

Here, the prosecutor was allowed to pose leading questions prejudicial to the defendant after it was clear that Troxell would not answer. For example, the state's attorney asked, "Are you going to answer any further questions that I have about the activities of you and the defendant, David Adkins, on the nights of June 26th and June 27th, 1985?" After the jury was informed that the witness had a case pending on appeal, this questioning created an impermissible inference of Adkins' guilt from Troxell's refusal to testify.[12] It was not harmless error to order the inquiry process to continue in the jury's presence. *Cf. Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976) ("[U]nless a reviewing court, upon its own independent review of the

---

12. In opening arguments, the prosecutor informed the jury that they would be "hearing a fair amount about Mr. Troxell, Darryl Troxell, in this case." It was clear that Troxell was implicated with Petitioner in the events arising out of the homicide of Teal. In closing arguments, the prosecutor again referred to Troxell, mentioning the fact that Teal, Adkins and Troxell were seen together on the evening of June 26, 1985, the day before Teal was found dead. He stated that two bartenders "were the last ones who saw Joe Teal alive; that is, of course, with the exception of Darryl Troxell and David Adkins." He further commented: "Now, of course, with respect to Mr. Troxell, it's too bad that he would not oblige us all by repeating from the witness stand what he told Lester Beach on December 21, 1985, but nonetheless, you've heard the tapes and you've got copies of the transcripts." The prosecutor continually referred to the crimes as having been committed by both Troxell and Adkins.

record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."); *Williams v. Zahradnick*, 632 F.2d 353, 360 (4th Cir.1980) ("An error is harmless only when the court, after assessing 'the record as a whole ...' can conclude beyond a reasonable doubt that the error did not influence the jury's verdict."). The accomplice's invocation of the Fifth Amendment before the jury resulted in circumstances such that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Douglas v. State of Alabama*, 380 U.S. 415, 420, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965), citing *Namet v. United States*, 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963).

Under the circumstances presented, because of our holding that it was prejudicial error for the trial court to require the accomplice to invoke the privilege against self-incrimination in the presence of the jury, we shall reverse Adkins' conviction and remand the case for a new trial. Because the remaining issues may not arise in a retrial, we decline to address them.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY, AND TO REMAND TO THAT COURT FOR A NEW TRIAL;

ALL COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WASHINGTON COUNTY.