567 A.2d 118

**Lloyd David ALLEN**

v.

**STATE of Maryland.**

**No. 10, Sept. Term, 1988.**

Court of Appeals of Maryland.

Dec. 26, 1989.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Norman L. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

COLE, Judge.

In this case we shall decide whether the trial judge erred when he called a prosecution witness as the court's witness when both the court and the prosecutor knew that the witness intended to claim his privilege against self-incrimination.

Petitioner, Lloyd David Allen, was tried by a jury in the Circuit Court for Prince George's County for his alleged involvement in the February 3, 1986, robbery of an establishment known as Godfather's Pizza. Specifically, he was charged with (1) robbery with a deadly weapon; (2) robbery; (3) use of a handgun in the commission of a crime of violence; (4) assault with intent to commit robbery; (5) possession of a pistol after a conviction of a crime of violence; (6) assault; and (7) theft over and under $300.00.[1]

Prior to jury selection, Petitioner's counsel proffered that one of the proposed witnesses, Antonio Buie, intended to invoke his Fifth Amendment right to remain silent. Antonio Buie, in a prior trial, had testified against his cousin, a co-defendant, Jerome Buie. In response to Petitioner's proffer, the prosecutor responded that the State could not say it would not prosecute Antonio for perjury because "if someone commits perjury, we are obligated to prosecute him, or the whole system goes."

Petitioner requested a pre-trial hearing on his motion in an effort to obviate such information from being presented to the jury in opening statement. At that hearing, the State indicated that it intended to have Antonio Buie called as a court's witness because the prosecutor could not vouch for Antonio's credibility[2] based on different versions of the

---

**1.** The charge of possession of a pistol after a conviction of a crime of violence was severed and the remaining counts proceeded before a jury. At the end of trial, the State "nolle prossed" all of the charges except the first count (robbery with a deadly weapon) and the third count (use of a handgun in the commission of a crime of violence).

**2.** Maryland Rule 1–501, effective January 1, 1989, allows any party, including the party calling the witness, to attack the witness's credibil-

events in question and because the prosecutor had, in the past, prosecuted Antonio Buie. Antonio's counsel stated that his client insisted upon asserting his Fifth Amendment privilege. The prosecutor announced that he intended to waive future prosecution of Antonio regarding the armed robbery of Godfather's Pizza and offered to confer immunity on him. Antonio's counsel disputed that the State had the authority to confer immunity. The court withheld its ruling.

The prosecutor in his opening statement told the jury that Antonio would be a witness, that Antonio was employed at Godfather's Pizza the night of the robbery, and suggested that Antonio would involve Petitioner as one of the robbers. He further told the jury that one of the robbers was Jerome Buie, a cousin of Antonio Buie.

At trial, Laurie Graham, manager of Godfather's Pizza, testified that she and Antonio, who was employed as a cook at the time, were working the evening the robbery occurred. She testified that two men walked in about 12:05 a.m., one was six-foot-one, dark skinned, and the other about five-feet five inches, and light skinned. The taller man was dressed in a running suit with a hood over his head and a handkerchief tied over his face. The lighter skinned male (alleged to be Petitioner) also had a hood over his head and a handkerchief tied over his face. Ms. Graham stated that the tall dark skinned man had a gun which "looked like a nine millimeter [handgun]...." She was told to hang up the telephone and "go in the back and open up the safe." She obeyed the instructions to open the safe. After doing so, she and Antonio were instructed to lie down on the floor. She estimated that $340.00 was in the safe. The entire transaction took about "five to seven minutes at the most." She made an in-court identification of the Petitioner as one of the robbers.

---

ity. This rule eliminates the common law rule that a party calling a witness vouched for that witness's credibility.

After Ms. Graham's testimony, the prosecutor requested that the court call Antonio as its own witness, again stating that he could not vouch for Antonio's credibility. Because Antonio's counsel could not be contacted, the court deferred his testimony and received other testimony in the case.

After Antonio's counsel[3] was located, the court called Antonio to the stand. Antonio's counsel objected to the court calling him as a witness. The objection was over-ruled, however, and the questioning proceeded in the pres-ence of the jury. After Antonio stated his name, the State asked him his date of birth. At that point, Antonio's attorney objected once again:

\* \* \* \* \* \*

By MR. McCARTHY: I am going to object and ask my client to refer to the note that I have passed to him. He had asked for it so he will not make a mistake.

THE COURT: All right. Did you look at it?

THE WITNESS: Yes, sir.

THE COURT: Okay. Now, the question is, when were you born.

THE WITNESS: I decline to testify on the ground it may incriminate me.

THE COURT: All right, come up, Mr. McCarthy.

(Counsel approached the bench and the following ensued).

THE COURT: What did you put on the note?

MR. McCARTHY: That.

THE COURT: To every question?

MR. McCARTHY: Yes, because I don't know what the questions are going to be that are going to be asked and other than his name, I would indicate to the court, that through my conversations with him, from my review of the transcript of the prior trial, it is my position that he does have a fifth amendment ground, and that he stands

---

**3.** Mr. McCarthy represented Antonio Buie. Mr. Chazen was the As-sistant State's Attorney. Mr. Courtois was defense counsel.

in jeopardy of possibly incriminating himself on the criminal charge, if he testifies.

THE COURT: Okay. Take the jurors into the jury room. We will be about three minutes.

(The jury was excused from the courtroom). (Counsel returned to the trial tables and the following ensued).

THE COURT: All right, Mr. Buie, I instruct you to answer every question that is asked of you by either lawyer in this case, and to disregard what your lawyer has advised you. Do you understand that?

THE WITNESS: Yes, sir.

THE COURT: Now, do you intend to follow my instructions?

THE WITNESS: No, sir.

THE COURT: All right. I am going to find you in contempt of this court, and I will set this matter in for trial after this case is over, and we will have a trial. All right?

MR. McCARTHY: Yes.

THE COURT: You are free to go.

\*       \*       \*       \*       \*       \*

The following day, Antonio's counsel, Allen's counsel, and the Assistant State's Attorney met with the judge outside the presence of the jury to decide whether or not Antonio could assert his Fifth Amendment privilege not to testify. The court decided that it would call Antonio as its witness because it would be able to protect Antonio from any subsequent prosecution arising from the robbery, thereby eliminating Antonio's basis for claiming his Fifth Amendment privilege.

In discussing the procedure to be followed in questioning the witness, Antonio's attorney suggested that the court use the procedure set forth in *Richardson v. State*, 285 Md. 261, 401 A.2d 1021 (1979). Under *Richardson*, the integrity of Allen's trial would be preserved if the questions which Antonio answered with a claim of his Fifth Amendment privilege were not asked before the jury. Defense counsel

stated that if Antonio took the stand, defendant would reserve the right to cross-examine Antonio.

The trial judge ruled that questions and answers could occur before the jury despite Antonio's Fifth Amendment claims, and that defense counsel was prohibited from asking any questions of the witness. Over defense counsel's objection, the court called Antonio to the stand as a court's witness, and permitted the prosecutor to question him. Whereupon, Antonio asserted his Fifth Amendment privilege before Petitioner's jury in response to several questions from the prosecutor as follows:

Q. Would you state your full name please?

A. Antonio Jethro Buie.

Q. How old are you, Mr. Buie?

A. Twenty.

Q. And where did you live back in February of 1986?

A. 5400 67th Avenue, Riverdale, Maryland.

Q. Did you live with a gentleman by the name of Jerome Buie in that household?

A. I would like to speak with my attorney before I answer that question.

I decline to testify on the ground it might incriminate me.

Q. Did you have a job back in February of 1986, Mr. Buie?

A. I would like to speak with my lawyer before I answer that question.

THE WITNESS: Yes, I did.

Q. Was that job at the Godfather's Pizza Place on Annapolis Road?

A. I decline to answer that question on the ground it might incriminate me.

Q. Do you see a gentleman by the name of Lloyd David Allen in the courtroom today?

A. Yes, I presume.

Q. Could you point to him and tell us for the record what he is wearing in court today, please?

A. I would like to speak to my lawyer before I answer that question.

Yes, he has on a blue shirt, blue Calvin Kleins.

Q. Would you point to him so we can be clear?

A. He is sitting at the table right here.

Q. The record should reflect the witness has identified the defendant, Lloyd Allen.

Were you present when an armed robbery took place at a Godfather's Pizza on February 3, 1986?

A. I would like to speak with my lawyer before I answer the question.

I decline to testify on the ground that it might incriminate me.

At the conclusion of the evidence, the jury found Petitioner guilty and he was sentenced pursuant to Md.Code Ann. Article 27, § 643B(c) (1987 Repl.Vol.) to a mandatory 25 years on the robbery with a deadly weapon count, and also to an additional 15 year consecutive sentence for the handgun violation. Petitioner appealed to the Court of Special Appeals which subsequently affirmed the judgment of the trial court in an unreported opinion.

We granted certiorari to address three interrelated issues:

1. Whether the trial court erred when it permitted the prosecutor to question Antonio Buie before the jury when the court knew or had reason to know the witness would assert his Fifth Amendment right to remain silent.

2. Whether the trial court erred when it called Antonio Buie as a court's witness.

3. Whether the trial court erred when it denied Petitioner's motion for mistrial.

Petitioner's principal contention is that the trial court committed reversible error when it permitted the prosecutor to question Antonio Buie before the jury when the court knew beforehand that he would assert the privilege against self-incrimination.

It has long been held that, under most circumstances, it is improper for a prosecutor to require a witness to claim his privilege against self-incrimination in the presence of the jury when, as in this case, the prosecutor knows or has reason to anticipate that the witness will assert the privilege in front of the jury. *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); *Vandegrift v. State,* 237 Md. 305, 206 A.2d 250 (1965); *Busby v. State,* 412 So.2d 837 (Ala.Crim.App.1982); *Burkley v. United States,* 373 A.2d 878 (D.C.App.1977); *People v. Giacalone,* 399 Mich. 642, 250 N.W.2d 492 (1977).

In *Namet v. United States,* the United States Supreme Court addressed this issue, although the Court concluded that it is not always reversible error for the prosecution to call a witness whom it has reason to believe will refuse to testify based upon the Fifth Amendment. 373 U.S. at 187, 83 S.Ct. at 1155, 10 L.Ed.2d at 284. The Court recognized that in determining whether a defendant's substantial rights have been affected, the courts must examine the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error. The Court stated that:

First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.

373 U.S. at 186, 83 S.Ct. at. 1154–55, 10 L.Ed.2d at 283 (citations omitted). The second ground noted by the Court seems to rest upon the conclusion that in the circumstances of a given case, inferences from a witness's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination and thus unfairly prejudiced the defendant. 373 U.S. at 187, 83 S.Ct. at 1155, 10 L.Ed.2d at 284.

Maryland courts have recognized these principles and have found that error on neither ground is to be presumed but must be judged from the attending circumstances nar-

rowly focusing on the purpose and consequences of the event in question. *Adkins v. State,* 316 Md. 1, 557 A.2d 203 (1989). It is our view that the present case is one where the prejudice to the Petitioner is contrary to the principles with the standards we set forth in *Vandegrift.* There we held that the calling of an accomplice or co-conspirator as a witness was prejudicial error. 237 Md. at 308, 206 A.2d at 252. Although *Vandegrift* was decided in a somewhat different factual context from the case at bar, we find the rationale used there instructive.

Vandegrift was convicted of assault and battery by a jury in the Circuit Court for Cecil County and was sentenced to five years in the House of Corrections. The State's Attorney called to the witness stand several co-defendants who had not as yet been tried, knowing that they would refuse to testify on the ground of self-incrimination. The State's Attorney made remarks in the presence of the jury relating to their refusal to testify upon the ground of self-incrimination. During the testimony of the witnesses, the State asked questions related to the crime charged. One witness's counsel objected to a series of questions and instructed his client not to answer. The record indicated that the State's Attorney did not act in good faith since it could reasonably be inferred that he knew the witnesses would not answer his questions relating to the crime. The trial judge in *Vandegrift* did not cure the error by an appropriate instruction or admonition to the jury. *Id.* at 309–310, 206 A.2d at 253. We held that the jury was potentially prejudiced because it was allowed to hear the assertion of the testimonial privilege against self-incrimination asserted by the alleged accomplices. These prosecutorial maneuvers strongly implied that the accused was also guilty of the crimes charged. We concluded that when a judge allows the prosecutor to call a witness for the sole purpose of creating an improper inference in the minds of the jurors, he commits reversible error. We hastened to make clear

that we did not suggest that the prosecutor may not call as a witness one he knows will refuse to testify. But he cannot do so with the intent to subvert his right to remain silent.

We put it this way:

It is manifest that the actions of the prosecutor in the case before us were prejudicial. However, we desire to make it clear that we do not mean to intimate that a State's Attorney is precluded from calling as a witness a codefendant in proper circumstances, nor do we intend to imply that when such a witness claims his privilege against self-incrimination prejudicial error necessarily results. The test is whether the State's Attorney calls the witness for the effect of the claim of privilege on the jury. Further, it should be noted that in a proper case a cautionary instruction by the trial judge to the jury might cure any error.

*Vandegrift*, 237 Md. at 309–10, 206 A.2d at 253. We adopted a five prong test to assist trial courts in determining whether prejudicial error existed:

1. that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of the jury;

2. that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and therefore, called him in bad faith and for an improper purpose;

3. that the witness had a right to invoke his privilege;

4. that defense counsel made timely objection and took exception to the prosecutor's misconduct; and

5. that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury.

*Id.* at 308–09, 206 A.2d at 252 (quoting 86 A.L.R.2d 1443, 1444–45). Thus, in finding four of these five elements present in *Vandegrift,* we concluded that the defendant was unfairly prejudiced because (1) the witnesses were co-defendants with the accused, their names had been mentioned previously during the testimony of the complaining witness in relation to the circumstances of the criminal event and they were asked questions relevant to the offense; (2) the State's Attorney did not act in good faith and the only inference to be drawn from his comments was that he knew the witnesses would not answer his questions concerning the crime; (3) the witnesses were co-defendants awaiting trial; and (4) the trial court failed to cure the error since the only comment made by the court was directed to the State's Attorney, not the jury. *Vandegrift,* 237 Md. at 309, 206 A.2d at 252–53. We did not state that each criterion must be satisfied in order to find prejudicial error in a given case. Rather, we emphasized that the test to be applied in cases involving a witness is whether the State calls the witness for the effect of claiming the privilege in the presence of the jury. *Id.* at 309, 206 A.2d at 253.

Here we are persuaded that Petitioner in the case at bar was unfairly prejudiced when the court called as its own witness Antonio Buie, who invoked the privilege before the jury. Under these circumstances, the court's calling the witness was the same as if the State did so itself. We explain.

The first prong of Vandegrift requires an inference of the witness's complicity causing prejudice to the defendant in the eyes of the jury. The concept of complicity suggests that the witness is clearly implicated in the defendant's alleged criminal activities, so as to establish the offense charged. *Id.* at 308, 206 A.2d at 252. This criterion presents a close question to be determined in light of the circumstances. An examination of the record reveals that Antonio Buie expressed concern early on about testifying. He was an employee at the establishment which was robbed and had testified against his cousin, Jerome Buie, Petition-

er's alleged co-defendant in a prior proceeding. Moreover, Petitioner's counsel brought to the attention of the prosecutor and the trial court, prior to jury selection, that Antonio Buie intended to invoke his Fifth Amendment right to remain silent to avoid possible perjury charges against himself. The remarks of the prosecutor in his opening statement underlined the relationship between Antonio Buie, Jerome Buie, and Petitioner. The prosecutor argued to the jury as follows:

> In addition [to] Ms. Graham and the police officers, you will also have an opportunity to hear from a witness whose name is Antonio Buie, and Antonio Buie is going to add some flavor to the trial in that we find ourselves, the State finds itself in a unique position, in that one of the two people accused of the armed robbery, his name is Jerome Buie, and he is the cousin of Antonio Buie, and Antonio Buie was an employee at the Pizza Place when the armed robbery occurred, so what we are charging is that Mr. Allen and Mr. Buie committed an armed robbery at a Pizza Place where Ms. Graham and the cousin were both working. You will hear what happened with Antonio Buie, that the police interviewed him at the pizza parlor, and he said he didn't know who did it, he didn't have any idea, but later, when he went to the police station and they were talking to him awhile and he is probably going to indicate that he felt like he couldn't leave the police station until he finally spoke to the policeman, he does say, oh, I know who committed the armed robbery, and the reason I know is because it is my cousin, Jerome Buie, and his close friend, Lloyd Allen. . . .

Petitioner argues that what took place in the prosecutor's opening statement implicated Antonio Buie in the Petitioner's alleged criminal activities and on the basis of this relationship implied that the Petitioner was guilty. We find merit in Petitioner's argument.

The purpose of an opening statement in a criminal prosecution is to inform the trier of facts of the issues involved and what evidence will be offered as proof to resolve those

issues. The prosecutor, while given a reasonable latitude in making his presentation, is confined to statements based on facts that he can prove and in good faith expects to prove. He may not allude to facts which are plainly inadmissible or to facts which in good conscience he does not expect to be able to prove. When the prosecutor exceeds these limitations he demonstrates bad faith and may deny the defendant a fair trial. Ordinarily it becomes incumbent upon the defendant to establish bad faith on the part of the prosecutor.

Under the circumstances of this case we believe it was prejudicial for the prosecutor to tell the jury what they should expect to hear when both he and the court knew or should have known that Antonio Buie intended to invoke the privilege against self-incrimination. Therefore, it was not feasible for the prosecutor or the court to put Antonio Buie on the stand. If the prosecutor had initially entertained a slight hope that Antonio would waive the privilege, the correct procedure would have been to request an opportunity to examine him out of the jury's presence to see if he would do so. This did not occur.

Nevertheless, the State argues that given the other evidence presented, specifically the testimony of Laurie Graham's positive identification of Allen, there is little danger that Antonio's testimony, or lack thereof, added "critical weight" to the State's case. We disagree. When a witness's refusal to testify is the only source of the inference that the witness engaged in criminal activity with the defendant, and the refusal is also a material part of the prosecution's case, then any improper inferences drawn from that refusal carry a "critical weight" and justify a reversal. Annotation, *Propriety and Prejudicial Effect of Prosecution's Calling as Witness, to Extract Claim of Self-Incrimination Privilege, One Involved in Offense Charged Against Accused,* 19 A.L.R.4th 368 (1983). The trial judge expressly stated to the jury that Antonio was being called "to see if we can get the truth and you will give his testimony whatever weight you think that it de-

serves." Both the prosecutor and the court knew Antonio would assert his privilege and it was reasonable to expect that the jury would draw improper inferences from this procedure. Thus, the second prong of the *Vandegrift* test was satisfied.

The third prong is also clearly presented in that the witness had a right to invoke his constitutional privilege against self-incrimination. *Richardson v. State*, 285 Md. 261, 401 A.2d 1021 (1979) is instructive on this point. In *Richardson* we discussed the protection which the Fifth Amendment affords—that no one should be compelled to give evidence against himself in a criminal proceeding. In *Richardson* we established a reasonable standard to be followed in determining when a witness's refusal to testify is justified on Fifth Amendment grounds. Citing *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951) we said:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a ... criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a ... crime. But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if "it clearly appears to the court that he is mistaken." However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of

why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Richardson,* 285 Md. at 266, 401 A.2d at 1024. (citations omitted); *see Choi v. State,* 316 Md. 529, 536–37, 560 A.2d 1108, 1111–12 (1989), and cases cited therein.

Applying the principles of *Richardson* to the present case, it is apparent that Antonio claimed his Fifth Amendment privilege in response to questions put to him by the prosecutor. When asked if he lived with Jerome Buie in the same household, and if he was present when the armed robbery took place on February 3, 1986, Antonio invoked his privilege by saying, "I decline to testify on the ground it might incriminate me." This was the proper procedure for the witness to follow. The jury, however, was present and the prosecutor, nonetheless, proceeded with questions. The trial court, knowing Antonio did not wish to testify, should have been conscious of the potential hazards of continued questioning. 285 Md. at 267–68 n. 3, 401 A.2d 1025 n. 3. Despite this risk, the trial judge at one point attempted to compel Antonio to testify and found him in contempt for refusing to answer his questions. It is obvious that Antonio only refused to answer those questions which would have provided a link in the chain of evidence needed to charge him in a subsequent prosecution. Despite the assurances of the trial judge that Antonio would not be prosecuted, responsive answers to these questions would be admissible against him at a later trial. Therefore, Antonio had a right to decline to answer.

As to the fourth criterion, Petitioner's counsel objected vociferously that Antonio's assertion of the privilege in the presence of the jury was improper. However, the court declined to heed this warning. Furthermore, the record shows that the fifth criterion was established. The trial court did not instruct the jury to disregard the assertion of Antonio's Fifth Amendment privilege.

For the above reasons, we conclude that the trial court erred when it called Antonio before the jury as the court's witness, when the court as well as the prosecutor knew or should have known that Antonio would assert his privilege against self-incrimination.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.