586 A.2d 55

**Kevin L. JONES**

v.

**STATE of Maryland.**

**No. 445, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 28, 1991.

John L. Calhoun, Assigned Public Defender, Towson (Stephen E. Harris, Public Defender, Baltimore, and Robert E. Polack, Towson, on the brief), for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before WILNER, C.J., and ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Kevin L. Jones, appellant, was convicted by a jury in the Circuit Court for Baltimore City of felony murder, robbery with a deadly weapon and use of a handgun in the commission of a felony or crime of violence. He was sentenced to life imprisonment, all but 30 years suspended, for the murder conviction and to two concurrent 20 year terms for the robbery and handgun convictions.

On appeal,[1] he contends that:

1. The court erred in its instructions as to reasonable doubt by charging the jury to use its "common sense" in its evaluation of the evidence;

2. The court erred by denying appellant's motion for a mistrial;

3. The evidence was insufficient as a matter of law to prove appellant's guilt beyond a reasonable doubt; and

4. The Appellant should have been granted a waiver to the jurisdiction of the juvenile court system.

There is merit in appellant's second contention; consequently, we will reverse and remand for new trial. We find it unnecessary to address his first contention, but we believe it appropriate, for the guidance of the trial court on remand, to address his third and fourth.

---

**1.** Although he did not initially file a timely appeal, pursuant to an order of the circuit court, dated April 25, 1990, he was granted the right to file a belated appeal.

## MISTRIAL

Appellant was charged, along with Timothy Rogers, his co-defendant, with the murder and robbery of Louis Ransom. They were tried jointly.[2]

During Rogers' case, the following occurred:

MR. KERPELMAN [Counsel for Rogers]: I would like to call Kevin Jones, as long as they are not here to hear me do it, I would like to call Kevin Jones as the next defense witness.

MISS JULIAN [Appellant's counsel]: I oppose that on the advice that my client has a Fifth Amendment right not to testify and he does not have to make that election until—I am advising him not to testify.

THE COURT: You are advising him not to testify in his own behalf, and he is calling him as a witness in the defense of Timothy Rogers. I am going to ask him—

MISS JULIAN: Including pleading the Fifth Amendment, is that correct?

THE COURT: Yes, that is my expectation, from what you said, but I think we ought to follow the appropriate procedure.

MISS JULIAN: Thank you.

THE COURT: Witness is called. Mr. Jones.

MR. KERPELMAN: For the record, Your Honor, I would ask him to make the election in front of the Jury.

THE COURT: The election to not testify?

MR. KERPELMAN: Well—

THE COURT: Is that right?

MR. KERPELMAN: I don't know what his election is going to be.

---

**2.** Rogers moved to sever the trials. Appellant confessed to complicity in the murder and exonerated Rogers. Thus, Rogers argued that should appellant refuse to testify, during this point in trial, he would be denied the benefit of that portion of appellant's statement which was favorable to him. The severance motion was denied, the State having indicated that it had no interest in using appellant's confession in its case in chief. Appellant specifically did not join in the motion.

THE COURT: Well, let us presume. We are going to presume for the sake of argument.

MR. GIBLIN [Prosecutor]: Your Honor—

THE COURT: Mr. Giblin?

MR. GIBLIN: I don't think he has an election not to testify as a witness. He has to get on the witness stand, in front of [the] Jury, and, you know, interject his Fifth Amendment right as a witness. Now, as a Defendant he doesn't have to go through that.

THE COURT: That's absolutely right, that is what I said. We will have him take the witness stand. Okay.

The jury having returned to the courtroom, appellant was called to the witness stand and, for most of the questions put to him, he did, as predicated, "[refuse] to answer, based on, from what my lawyer told me, I pled the Fifth Amendment." Subsequently, in response to a note from the jury asking, "What does it mean when the Defendant takes the Fifth?" the court stated: "As it applies to this situation, the Fifth Amendment makes the following prohibitions, no person shall be compelled in any criminal case to be a witness against himself." Appellant had not, to this point, requested a mistrial.

Prior to the jury being instructed, however, appellant moved for mistrial. The motion was based on his being called as a witness in his co-defendant's case, thus, being required "to elect out loud or—not elect but advised that he was refusing to testify based on the advice of his counsel." Specifically, he argued:

I am at this time moving for mistrial. Nothing has changed from that point in the trial but on further reflection, regarding jury instructions, when we were trying to decide if there is a difference, what they would be advised regarding his refusal to testify, regarding his election as a witness and as a defendant, it became very clear that his refusal to testify out loud when called by the co-defendant has placed my client in an unfavorable light and nothing at that point can cure that problem.

Now, I know, Your Honor, that we have an instruction that will attempt to do that, but it will be difficult for the Jury to ignore the fact that the only words they heard from my client are "I refuse to testify." I state that the Fifth Amendment right is very similar, it's the same, both his election not to testify at that time when called by the co-defendant is the same, would be the same as electing to remain silent. It's just by having to say that on the record puts him in a more negative light than a neutral light, which is what the Jury will be instructed that they are supposed to view him in when he has elected not to testify in his own case.

The language and the intent of the instructions that the Court is willing to give shows that, it underscore the principle that he is entitled to a neutral inference, and the Jury is not to conclude anything negatively or positively. That neutral inference has been shattered by the co-defendant calling my client to the stand, and for those reasons I would ask for a mistrial at this point.

The court denied the mistrial motion.[3] It later instructed the jury on the point, as follows:

... You will note that the Defendant Kevin Jones has exercised his Constitutional right, under the Fifth and Fourteenth Amendments to remain silent.

Under our system of criminal justice he has the absolute right to say nothing with no inference of guilt from his silence. His silence must not be considered by you in any way, must not even be discussed by you. This instruction also covers those instances in which the Defendant Kevin Jones, in this circumstance, took the witness stand and invoked his Fifth Amendment right against self-incrimination. His right to be silent, again, neither his taking the stand and invoking his Fifth Amendment right nor his

---

**3.** Rogers joined in the mistrial motion, but for reasons related to the denial of his motion for severance and, perhaps, more critical, at that stage, the court's limitation of his closing argument—Rogers was not allowed to argue that appellant could have cleared his client.

remaining silence must be considered by you nor shall either be discussed by you in your deliberations.

Appellant did not object to these instructions.

Few propositions are as well-settled as that a mistrial should be declared only when there is "manifest necessity" and "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes...." *U.S. v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). Moreover, the decision to grant a mistrial is addressed to the sound discretion of the trial court, the exercise of which is not to be disturbed on appeal in the absence of abuse. *Wright v. State,* 312 Md. 648, 654, 541 A.2d 988 (1988); *State v. Crutchfield,* 318 Md. 200, 205, 567 A.2d 449 (1989). Whether a trial court's ruling on a motion for mistrial is an abuse of discretion is dependent upon the attendant circumstances.

"It has long been held that, under most circumstances, it is improper for a prosecutor to require a witness to claim his privilege against self-incrimination in the presence of the jury when ... the prosecutor knows or has reason to anticipate that the witness will assert the privilege in front of the jury." *Allen v. State,* 318 Md. 166, 174, 567 A.2d 118 (1989), citing *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); *Vandegrift v. State,* 237 Md. 305, 206 A.2d 250 (1965); *Busby v. State,* 412 So.2d 837 (Ala.Crim.App.1982); *Burkley v. United States,* 373 A.2d 878 (D.C.App.1977); *People v. Giacalone,* 399 Mich. 642, 250 N.W.2d 492 (1977). *See also Adkins v. State,* 316 Md. 1, 557 A.2d 203 (1989). Two principle theories have been identified as underlying the finding of prejudicial error based upon the calling of a witness whom the prosecution knows will refuse to testify on the basis of the privilege against self-incrimination: (1) "error ... based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege," *Namet,* 373 U.S. at 186, 83 S.Ct. at 1154–55, and (2) a witness' refusal to answer on the basis of self-incrimination

may, under the circumstances of a given case, add critical weight, in a form not subject to cross-examination, to the prosecution's case and thus unfairly prejudice a defendant. *Id.,* 373 U.S. at 187, 83 S.Ct. at 1155; *Allen,* 318 Md. at 174, 567 A.2d 118.

Maryland courts have recognized these principles as well. *See Allen,* 318 Md. at 174, 567 A.2d 118; *Adkins,* 316 Md. at 5–6, 557 A.2d 203. In *Vandegrift,* the Court adopted a five prong test for determining whether, in a given circumstance, prejudicial error exists:

1. that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of the jury;

2. that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and therefore, called him in bad faith and for an improper purpose;

3. that the witness had a right to invoke his privilege;

4. that defense counsel made timely objection and took exception to the prosecutor's misconduct; and

5. that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury.

237 Md. at 308–09, 206 A.2d 250 (quoting 86 ALR 2d 1443, 1444–45). *Vandegrift* made clear that not every prong of the test need be met, nor a finding of prejudicial error necessarily required whenever the prosecution called a witness knowing that that witness would take the Fifth Amendment. The court made clear, rather, that "[t]he test is whether the State's Attorney calls a witness for the effect of the claim of privilege on the jury," 237 Md. at 309, 206 A.2d 250, and that, in a proper case, a cautionary instruction just might cure any error. *Id.,* 237 Md. at 310, 206 A.2d 250.

The facts of the case *sub judice* are significantly different from those of the cases that have heretofore addressed this issue. In this case, Rogers, appellant's co-defendant in a joint trial, called appellant as a witness in his case. And he did so fully aware that appellant would exercise his Fifth Amendment privilege and refuse to testify. Given that knowledge, it may be inferred that that was the sole reason for calling him. In other words, Rogers called appellant in order to emphasize appellant's complicity and, in that way, he hoped, exonerate himself.

Aside from the facts that it was the co-defendant, rather than the State, that called appellant as a witness and that the trial court specifically instructed the jury, both in response to the jury's question, and at the close of all the evidence, concerning how it should treat appellant's "taking the Fifth," all of the *Vandegrift* factors are satisfied in this case. Appellant and Rogers were not only charged with the same offenses, but they were jointly tried. Consequently, it is clear that appellant had the right to invoke his privilege. Because appellant had earlier made known his intention to invoke his privilege against self-incrimination, Rogers was aware, as was the State and the court, prior to calling appellant, that appellant would not waive the privilege. When Rogers stated his intention to call appellant as a witness in his case, appellant noted a timely objection.

■ Of course, just as neither the State nor the court may comment on an accused's silence, neither may the State or the court call a defendant to testify in the case in which he or she is on trial. Thus, even when two defendants are tried together, neither may be called by the State or the court to testify against the other. The question that this case presents is whether, in a joint trial, one of the co-defendants may call the other, something that neither the court nor the State is permitted to do without causing prejudicial error?

■ In order to address this question, it is necessary that we first consider the rationale for the Fifth Amendment

right against self-incrimination. Encompassed in that aspect of the Fifth Amendment are two fundamental rights, both of which are afforded protection: (1) the right of any witness to refuse to answer questions which might tend to incriminate that witness and (2) the right of a defendant to refuse to answer any question concerning the case for which he or she is on trial. 8 Wigmore, Evidence (McNaughton Rev.1961), § 2268, Mode and Effect of Claiming The Privilege, pp. 402–406. The latter protection has been "universally held" to prohibit the calling of a defendant as a witness in the case in which he is on trial. *Id.* at 406. *See also* C. McCormick, Evidence (3rd Ed.1984) § 130, p. 315. "For a co-defendant in a criminal case, the privilege of course applies—*i.e.*, one defendant cannot call a co-defendant unless the latter waives his privilege." 8 J. Wigmore, Evidence (McNaughton Rev.1961) § 2268, p. 410; *United States v. Echeles*, 352 F.2d 892, 897 (7th Cir.1965); *De Luna v. United States*, 308 F.2d 140, 149 n. 25 (5th Cir. 1962); *United States v. Housing Foundation of America, Inc.*, 176 F.2d 665, 666 (3rd Cir.1949); *State v. Medley*, 178 N.C. 710, 100 S.E. 591, 592 (1919); *State v. Sierra*, 213 Conn. 422, 568 A.2d 448, 455 (1990). In *United States v. Housing Foundation of America, Inc.*, the Third Circuit Court of Appeals characterized a trial court's ruling, permitting one defendant in a joint trial to call the other, over objection, as "so fundamental an error that the judgment must be reversed and a new trial ordered." 176 F.2d at 666. It explained:

> The error made arises from confusing the privilege of a witness not to give incriminating answers with the right of the accused not to take the stand in a criminal prosecution against him. Both come within the protection of the clause of the 5th Amendment which provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." The plain difference between the privilege of witness and accused is that the latter may not be required to take the stand at all.

*Id.* In *Echeles,* the trial court denied the motion, made by the defendant attorney, to sever his trial from that of his co-defendant, his client. The Court of Appeals reversed, noting that, in a joint trial, one defendant may not call the other as a witness, even for the purpose of eliciting exculpatory evidence. Relying on the cases just cited, the Court concluded:

> Thus, Echeles could not properly call Arrington as a witness during Echeles' case in chief. For if Arrington declined to take the stand, as was his right, Echeles' action in calling him and forcing him to decline do so in front of the jury would have injected prejudicial error into the record as to Arrington.

352 F.2d at 898.

*De Luna* is also instructive, not only for the support it gives the proposition that, in a joint trial, one co-defendant cannot call the other when that defendant has elected not to testify, but also for the guidance it provides as to the importance of the rule against self-incrimination. The issue in *De Luna* was the propriety of the trial court permitting one defendant in a joint trial to comment upon the exercise by the other defendant of his constitutionally guaranteed right to remain silent. In finding the allowance of such comments to be prejudicial error, the court noted:

> If comment on an accused's silence is improper for judge and prosecutor, it is because of the effect on the jury, not just because the comment comes from representatives of the State. Indeed, the effect on the jury of comment by a co-defendant's attorney might be more harmful than if it comes from judge or prosecutor.

308 F.2d at 152 (Footnote omitted). Since the source of the prohibition of comment and calling a defendant as a witness in a case in which he is the defendant is the same, it follows that it is the effect of calling the defendant to the witness stand and requiring that defendant to take the Fifth that is offensive, rather than the identity of the party calling him. Moreover, *De Luna* makes clear that "to meet the requirements of a fair trial as embodied in the Fifth Amendment,

the trial judge must protect an accused's right of silence." 308 F.2d at 154.

■ This factual difference is of little, if any, significance. A defendant in a criminal case has no burden of proof; he or she may not be compelled to give testimony, rather he or she has an absolute right to decline to testify. *See Hardaway v. State*, 72 Md.App. 592, 600, 531 A.2d 1305 (1987), *rev'd on other grds.*, 317 Md. 160, 562 A.2d 1234 (1989). Upon electing to remain silent, the defendant may insist that the jury be instructed not to draw any adverse inference of guilt from that election, *id.*, or, in order to avoid emphasizing the issue to the jury, insist that the court make no comment at all on his election. *Hardaway v. State*, 317 Md. 160, 166–69, 562 A.2d 1234 (1989). What's more, the election to testify, or not, need not be made in the presence of the jury. Moreover and, perhaps, most important, it need not be expressed in terms of "taking the Fifth." This is true whether the defendant is tried singly or jointly with others.

■ As we have seen, the co-defendant's purpose in calling appellant was to obtain evidence exonerating him. To do so, it was necessary of course, to establish appellant's complicity or, at the least, to emphasize it. Thus, although in the strict sense of the term, Rogers may not have acted in bad faith or even for an improper motive, acting with advance knowledge that appellant would claim his privilege against self-incrimination in front of a jury, had the same effect as if he actually had an improper purpose. It is also interesting to note that, although neither the court nor the State called appellant, neither resisted his being called and, indeed, more than acquiescing, they facilitated it. Despite appellant's objection and without addressing the possible prejudice it may cause, the court simply stated "we ought to follow the appropriate procedure," a view reinforced by the State. And the significance of appellant having "taken the Fifth" when called as a witness was not lost on the jury; it posed a question concerning what that meant.

To be sure, the court responded to the jury's question and, later, instructed it not to consider either his election to remain silent or his having taken the Fifth when called as a witness. Furthermore, as *Vandegrift* pointed out, a jury instruction may very well cure the error of calling a witness knowing that the witness will take the Fifth Amendment.

Notwithstanding, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). *See Jackson v. Denno,* 378 U.S. 368, 388–89, 84 S.Ct. 1774, 1786–87, 12 L.Ed.2d 908 (1964). The Court in *Bruton* found such a context "where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial," 391 U.S. at 135–36, 88 S.Ct. at 1628, and, therefore, concluded:

Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.

391 U.S. at 137, 88 S.Ct. at 1628. In *Jackson v. Denno,* a limiting instruction was held to be ineffective where a defendant's confession was introduced into evidence, with the instruction to the jury to disregard it should the confession be determined to be involuntary.

The situation *sub judice* is no less compelling. Appellant's right, which is ordinarily an absolute one, to elect not to testify has been undermined, indeed, rendered meaningless, by being called as a witness in his co-defendant's case. Permitting appellant to be called by his co-defendant, knowing that he would take the Fifth emphasized appellant's complicity in the crimes for which he and the co-defendant were being tried. Furthermore, the procedure, which called attention and gave additional importance to appellant's elec-

tion to remain silent, "could only have, as its chief effect, the emphasizing of his refusal ... and thus the indirect suggestion of that inference against him from which he is protected by another aspect of the principle." *See* 8 Wigmore, Evidence, § 2268, p. 408. This was exacerbated when the jury inquired as to the meaning of "taking the Fifth," since, instead of one instruction being given on the point, two were now required. Finally, the message flowing from the "silent" election not to testify and the very vocal "taking the Fifth" is quite different. In the former situation, appellant could have opted for no instructions being given the jury concerning his election; in the latter he could not, especially when the jury requested an explanation. Under the circumstances, we think it patent that limiting instructions were not adequate to protect appellant's right to a fair trial.

We believe the mistrial motion should have been granted.

## SUFFICIENCY OF THE EVIDENCE

Appellant's contention that the evidence was insufficient to sustain his convictions is without merit. The thrust of his argument is that his conviction was based upon uncorroborated accomplice testimony. We see it otherwise.

In *Rivenbark v. State*, 58 Md.App. 626, 635, 473 A.2d 1329 (1984), *aff'd in part, rev'd in part*, 311 Md. 147, 533 A.2d 271 (1987):

If there is no conflict in the evidence as to a witness' participation in the crime or where his participation is conceded, the question whether the witness is an accomplice is one of law for the trial judge to determine. Conversely, where there is a conflict in the evidence as to the witness' participation in the crime either as a principal or as an accessory before the fact, the question of whether he is an accomplice is one of fact for the jury to resolve.

Contrary to appellant's position, we are satisfied that the court correctly submitted the question, whether the witness-

es against appellant were accomplices, to the jury for decision.

## REVERSE WAIVER

■ Appellant's final contention is that the court erred in denying his motion for reverse waiver. He argues:

> The purpose of the "reverse waiver" proceedings is to allow for the option, in Appellant's case, of committing to the juvenile system a 14 year old child who may yet be salvageable and who may benefit from such disposition. The presumption is that the child would benefit from the juvenile court system. *In Re Barker*, 17 Md.App. 714, 305 A.2d 211 (1973). Judge Arabian felt that better treatment may be available in the adult system and this is inconsistent with the presumption. Had Appellant been the gunman or had he even known the risk he was taking, the matter would have a wholly different complexion based on the societal interest involved. To hold a 14 year old child to adult standards of malice by implication of the statute is of doubtful service to society's interest.

Appellant does not, as his argument reveals, suggest that he met any burden of showing that it would have been in society's best interest if he were tried in the juvenile court.

In *Crosby v. State*, 71 Md.App. 56, 63, 523 A.2d 1042 (1987), we stated that the burden is on the party seeking it to establish that reverse waiver is required. Since appellant has not met that burden, we hold that the court did not abuse its discretion when it denied his reverse waiver motion.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR NEW TRIAL.

COSTS TO BE PAID BY MAYOR & CITY COUNCIL OF BALTIMORE.